State v. Hall.

## THE STATE v. THOMAS HALL, Appellant.

### Division Two, May 13, 1902.

1. **Appellate Practice: NO BRIEF: MATTERS REVIEWABLE.** In the absence of any brief or other errors assigned in the appellate court, it will be presumed that the motion for a new trial in a State case states the grounds upon which defendant seeks a reversal.

2. **Murder: SUFFICIENCY OF EVIDENCE.** Defendant and his mother had obstructed a road near their houses, which for many years had been used by the public, by felling trees and brush therein. A neighbor boy had started to church along this road, and encountering the obstructions returned to his father's for an ax to remove them. His father, deceased and others went with the boy, and while they were removing the obstructions, defendant's mother came up and ordered them to cease, and as they were quarrelling about the matter, defendant approached with a rifle, ordered his. mother to stand aside, and said: "There is that G—d d— Jim Asher, I am going to kill him." Asher, who was at the time holding the horse of the boy who had started to church, replied, "Hold on, Tom, I haven't done anything," but defendant immediately fired the fatal shot. Defendant and his mother testified that deceased said as defendant approached with his gun, "If you can shoot quicker than I can, you had better be at it," and threw his hand behind him as if to draw a pistol, but all the other. witnesses deny this, and state deceased merely instinctively moved to avoid the shot. He had no pistol or other weapon about his person at the time. , *Held*, that this evidence was not only sufficient to sustain the verdict of murder in the second degree, but a verdict of murder in the first degree would have been approved.

3. ———: ———: **INSTRUCTION FOR MANSLAUGHTER.** In the face of this evidence, the court committed no error in refusing to instruct on manslaughter in any degree, there being no provocation to reduce the homicide below murder in the second degree.

Appeal from Iron Circuit Court.—*Hon. Frank R. Dearing,*
Judge.

*Affirmed.*

*J. J. Cope* and *J. W. Callahan* for appellant.

*Edward C. Crow,* Attorney-General, and *Sam. B. Jeffries,* Assistant Attorney-General, for the State.

(1) The evidence shows deceased to have been shot down in cold blood. The most surprising feature of the case is that the jury did not convict him of murder in the first degree. (2) In the case of State v. Bowman, 161 Mo. 88, the court held that the weight of the evidence is for the jury, and where the evidence, if believed by the jury is sufficient to sustain the verdict, the Supreme Court will not interfere. This has always been the rule in this court. State v. Marcks, 140 Mo. 656; State v. Elie, 147 Mo. 535. (3) The second allegation of error contained in the motion for a new trial is that the court permitted improper evidence to go to the jury over the objections of the defendant. This is a general objection, alleging error in general terms, and under the rule adopted in the case of State v. David, 159 Mo. 534, is not sufficient to be considered by the appellate court. (4) No error was committed by the trial court in failing to instruct on manslaughter in the fourth degree. Defendant was guilty of murder in the first or second degree, or the killing was justifiable on grounds of self-defense.

GANTT, J.—At the regular October term, 1900, of the circuit court of Iron county an indictment was preferred against the defendant charging him with murder in the first degree of James W. Asher on June 24, 1900. Defendant was duly arraigned on October 24, 1900, and pleaded not guilty,

and a copy of the indictment was furnished him on that day, and the cause set down for trial on December 10, 1900. Both parties announced ready for trial on the 10th of December, and a jury was duly selected, and the trial of the cause proceeded until the 15th of December, when the jury returned a verdict of guilty of murder in the second degree, and assessed defendant's punishment at ten years in the penitentiary. The evidence presents the following case:

Defendant lived on his mother's farm in Iron county, his house being only a short distance from that of his mother. The deceased, James W. Asher, and defendant and his family had not been on good terms for sometime. A traveled road runs along near the dwellings of defendant and his mother. It is not shown whether the road was a public one or not, but it seems to have been traveled by the public for many years. A few days before the shooting, defendant and his mother closed up the road by felling trees and brush across it so as to impede or prevent travel. The deceased, Asher, and witnesses Clemens and his sons, Jake and Charley Asher, used the road in getting out from their homes. On Sunday morning, June 24, 1900, about nine o'clock, Clemens, Jake Clemens, Charley and Jim Asher were at the house of witness Clemens. Jake Clemens got on his horse and left soon after. In a few moments he came back to the house and called for an ax, saying the road was stopped up down at Hall's. They went down, some of them commenced cutting the trees and brush out of the road, but deceased took no part in the cutting. Defendant's mother, Martha Hall, came up and ordered them to leave the trees and brush alone. While they were discussing the matter with her, defendant came up with a Winchester rifle in his hands. He stepped up near the brush in plain view, at the same time telling his mother to get out of his way, saying, "There is that G— d— Jim Asher; I am going to kill him." Asher, who stood holding Jake Clemens's horse, remarked: "Hold on, Tom, I haven't done anything." Hall,

then, without further words, raised his gun and fired, the ball taking effect in Asher's breast, from which he died in about four hours.

Defendant asserts he shot in self-defense. He and his mother, Martha Hall, both testified that James Asher made the remark upon defendant's approach, that, "If you [defendant] can shoot quicker than I [Asher] can, you had better be at it," and that with that expression, he threw his hand behind him as if in the act of getting a revolver, when defendant, fearing his life was in danger, immediately raised his gun and fired.

There was much evidence of threats on both sides.

The witnesses for the State, who were present when the shooting occurred, state that deceased was holding Jake Clemens's horse, and that he made no movement at drawing a gun on defendant, and that when his body was examined and clothing searched he had no weapons of any kind about him, not even a pocket knife.

There was evidence tending to show good and bad reputation of both defendant and deceased.

No brief has been filed on behalf of defendant and we have not been favored with an oral agreement in his behalf. We have been compelled to examine the record for the errors, if any, upon which this appeal is based. The indictment is well drawn and in accordance with long-approved precedents. The record proper in all other respects deserves much commendation for its fullness, its careful attention to details, and its most excellent index.

It must be presumed in the absence of any errors assigned in this court, that the motion for new trial states the grounds upon which defendant seeks a reversal.

I.   The first ground is that the verdict is against the law and the evidence. The testimony exhibits a clear case of a deliberate predetermination on the part of defendant to kill deceased. He and others of his family had obstructed a

road that for many years had been used by the public in that neighborhood, and he had armed himself with a Winchester rifle to prevent the removal of these obstructions. When he reached the scene of the homicide he found deceased standing in the road holding the horse of young Jacob Clemens who had started to church and found the road obstructed. Without paying any attention to those who were trying to remove the brush and trees from the road, he at once ordered his mother to stand aside, saying, "There is that d—d Jim Asher, I am going to kill him." The deceased called to him, "Hold on, Tom, I haven't done anything," but defendant immediately fired, the ball penetrating the breast of deceased, from which wound he died about four hours later. The shooting was admitted by defendant but he asserts he shot in self-defense. He and his mother testified that when defendant appeared on the scene, with his rifle, deceased said to him, "If you can shoot quicker than I can, you had better be at it," and made a motion as if to draw a revolver. All the other eyewitnesses positively contradict this, and say that deceased merely instinctively moved to avoid the shot when defendant aimed the gun at him. The jury rejected the plea of self-defense, and the evidence fully justified them in so doing. The circumstances authorized the jury to find that defendant was actuated by express malice in killing deceased, and a verdict of murder in the first degree would have been approved on this evidence.

II. Some exceptions to the rejection of testimony offered by defendant were saved, but an examination of the record shows they are without merit. The court admitted the evidence of threats made by deceased against defendant.

III. No error was committed in failing to instruct on manslaughter in any degree. There was no provocation to reduce the homicide below murder in the second degree.

The other grounds of the motion are wholly unsupported by the record.

Upon the whole, the homicide was entirely without justification in law or fact, and the defendant has cause to congratulate himself that his triers were so merciful, but no ground to complain.

The judgment is affirmed. All concur.